# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cr-00027-TWP-TAB |
| | ) | |
| DAVON GRAY, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on a Motion to Suppress filed by Defendant Davon Gray ("Gray") (Filing No. 71). Gray is charged with violating 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm and Ammunition (Filing No. 13 at 1). He asks the Court to suppress "all physical or testimonial evidence resulting from a traffic stop conducted on [January] 11, 2018 and the subsequent police search of a vehicle operated by Mr. Gray and his person." (Filing No. 71.) An evidentiary hearing on Gray's Motion was held on July 6, 2021. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law. For the reasons set forth below, the Motion to Suppress is **granted**.

## I.    FINDINGS OF FACT

Officer Daniel Hiser ("Officer Hiser") joined the Indianapolis Metropolitan Police Department ("IMPD") in late October 2014. During the subsequent 26-week IMPD academy, Officer Hiser received a "couple of hours" training on the appearance and odor of multiple narcotics in different forms, such as powder, pills, and ice from methamphetamine. He was also shown raw marijuana in open and closed packages, as well as marijuana that was burnt so that he could see and smell the odor of burning marijuana and discern it from the odor of raw marijuana. This training, however, did not involve any test of Officer Hiser's ability to detect that scent from

certain distances or inside certain packages. Though Officer Hiser has never had his sense of smell tested and does not generally consider his sense of smell extraordinary, he estimates that he smells raw marijuana at some point during approximately a quarter of the traffic stops he conducts.

In 2018, Officer Hiser was assigned to IMPD East District, and "the east side of Indianapolis has the most violent crime in the city for multiple years running." At about 3:30 p.m. on January 11, 2018, Officer Hiser was patrolling in his police cruiser in the East District when he turned south onto Arlington Avenue from 31st Street. As he moved into the left lane of Arlington Avenue behind a Dodge Stratus driven by Gray, Officer Hiser testified that he could smell the strong odor of raw marijuana. Officer Hiser believed the scent to be coming from the Stratus, so he continued southbound to try to verify that this vehicle was the source of the aroma. (Filing No. 72-1 at 5.) While cars were not "bumper to bumper," there was still some traffic present. Several blocks later, around 23rd Street, the Stratus moved into the right lane, and Officer Hiser could no longer smell the marijuana odor. Officer Hiser then switched lanes and the fragrance returned. *Id.* The Stratus then slowed, turning into an Express Mart at the corner of 21st Street and Arlington Avenue. Again, as the Stratus departed the lane, Officer Hiser testified that the scent vanished. At this point, Officer Hiser decided to stop the vehicle and pulled behind the parked Stratus, initiating his emergency lights and siren. *Id.*

Although it would have been important to note whether his window was up or down, Officer Hiser could not recall whether any of his police cruiser's windows were down on the unseasonably warm January day (it was over 50 degree Fahrenheit). It is also unknown to Officer Hiser whether the windows on the Stratus were turned down. Officer Hiser cannot recall any other time where he pulled a vehicle over because he perceived the smell of raw marijuana from a

moving vehicle while in his moving vehicle—though it is "probable," that he has previously smelled raw marijuana coming from moving vehicles.

As Officer Hiser exited his patrol vehicle, he testified that he could again smell the strong odor of marijuana and that the fragrance grew as he approached the driver-side window. Officer Hiser then collected identifying information from Gray and returned to his police cruiser. At this point, Officer Shane Nicholsen ("Officer Nicholsen") arrived on the scene. Upon arrival, Officer Nicholsen could not smell marijuana while inside of his police cruiser and, like Officer Hiser, could not recall whether his windows were down. But as he exited his vehicle, Officer Nicholsen—who believes that he smells raw or burning marijuana once or twice a shift—could immediately ascertain the odor of raw marijuana, which grew as he neared the Stratus.

Officer Hiser asked Gray to step out of the vehicle and go to the front of the patrol vehicle. Officer Hiser informed Gray that he was stopped due to the odor of marijuana. Gray was compliant and polite and informed Officer Hiser that he had approximately one ounce of marijuana under the driver's seat in the vehicle. Officer Hiser then placed handcuffs on Gray and walked back to the Stratus, where he found a scale and two resealable plastic baggies (sandwich sized) filled with a total of 3.59 ounces (102 grams) of raw marijuana, under the front seat. (Filing No. 87 at 3-6). The potency of the odor, according to Officer Nicholsen, was an eight or nine out of ten. Shortly thereafter, Officer Hiser located a firearm on Gray's left ankle as he performed a search incident to Gray's arrest, forming the basis for the charge in this case (*see* [Filing No. 13 at 1](#)). Gray moves to suppress all evidence stemming from the traffic stop ([Filing No. 71](#)).

## II.   CONCLUSIONS OF LAW AND DISCUSSION

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because a traffic stop constitutes a "seizure" under the Fourth Amendment, it is "subject to the

constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996).

> "Under *Terry*, police officers may briefly detain a person for investigatory purposes based on the . . . standard of reasonable suspicion that criminal activity is afoot." *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). Reasonable suspicion must account for the totality of the circumstances and "requires 'more than a hunch but less than probable cause and considerably less than preponderance of the evidence.'" *Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010) (quoting *Jewett v. Anders*, 521 F.3d 818, 823–25 (7th Cir. 2008)).

*United States v. Reedy*, 989 F.3d 548, 552 (7th Cir. 2021). "[T]o justify a 'particular intrusion [a] police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion.'" *United States v. Rodriguez-Escalera*, 884 F.3d 661, 668 (7th Cir. 2018) (quoting *Terry*, 392 U.S. at 21). "The government bears the burden of proving by a preponderance of the evidence that reasonable suspicion supported the traffic stop." *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020) (citation omitted). Ultimately, the products of an unconstitutional search are subject to suppression. *See, e.g.*, *United States v. Calandra*, 414 U.S. 338, 348 (1974).

At issue here is whether the initial stop of Gray is consonant with the Fourth Amendment and *Terry*.[1] This turns on whether Officer Hiser had "reasonable suspicion," through "specific and articulable facts," that "criminal activity was afoot," when he stopped Gray. *See Rodriguez-Escalera*, 884 F.3d at 668. The totality-of-the-circumstances test used while examining reasonable suspicion "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well

---

[1] As discussed by the appellate cases below, it seems (but the Court need not decide) that the officers had probable cause to search Gray's car once they neared the stopped vehicle and smelled the raw marijuana odor. *See United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008) ("A police officer who smells marijuana coming from a car has probable cause to search that car."). But the underlying stop itself must be lawful at its inception. *See Rodriguez v. United States*, 575 U.S. 348, 355 (2015).

elude an untrained person," however, a district court "need not accept all of an officer's proffered justifications at face value . . . [and] as fact-finder is entitled to weigh the evidence presented at a suppression hearing." *Id.* at 669 (quotations omitted); *see also United States v. Khan*, 937 F.3d 1042, 1053 (7th Cir. 2019) (noting that appellate courts give "due weight to the trial court's assessment of the officers' credibility and the reasonableness of their inferences"). In fact, appellate courts "must accept the district court's credibility determination unless the facts, as testified to by the police officers, were so unbelievable that no reasonable factfinder could credit them . . . [or] that is contrary to the laws of nature or so internally inconsistent or implausible on its facts that no reasonable factfinder would credit it." *United States v. Contreras*, 820 F.3d 255, 263 (7th Cir. 2016) (quotations omitted); *see also United States v. Cherry*, 920 F.3d 1126, 1139 (7th Cir. 2019) ("To find a witness's testimony to be incredible as a matter of law, it must have been physically impossible for the witness to have observed that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all.") (quotation omitted), *cert. denied*.

In his brief supporting his Motion to Suppress, Gray starts by noting that Officer Hiser followed his "vehicle for over 10 city blocks prior to activating his lights and sirens, yet noted no driving infractions that might have otherwise justified the initial stop." (Filing No. 72 at 3.) Gray argues that all evidence flowing from the stop should be suppressed because "[n]o reported state or federal decision appears to have even considered the assertion that a claimed perception of the odor of raw marijuana emanating from a moving vehicle, of itself, justified an initial traffic stop." (Filing No. 72 at 4–5.) On the other hand, "[o]dor observations made by an officer standing outside a vehicle's window or open door, have generally been viewed as adequate to generate probable cause to search." *Id.* at 4 (citing *United States v. Kizart*, 967 F.3d 693 (7th Cir. 2020) (smell of

burned marijuana after traffic stop for speeding); *United States v. Brissey*, No. 2:11-cr-0002-JMS-CMM-1, 2012 WL 1390197 (S.D. Ind. Apr. 20, 2012) (officer approached wrecked vehicle, detecting odor of raw marijuana when the door was opened); *United States v. Maxie*, No. 3:16-CR-024 JD, 2018 WL 6011873 (N.D. Ind. Nov. 15, 2018) (vehicle stopped because of warrant for passenger; officer and canine detected odor of raw marijuana)).

Gray argues, "no report of a trained canine with the olfactory prowess to identify the scent of raw marijuana from a moving vehicle appears in case law." *Id.* at 5. He points to "an experiment about the ability of humans to smell from a vehicle's passenger compartment packaged marijuana located in the vehicle's trunk," where results showed "that the number of false positive reports was essentially the same as the number of correct positive reports." *Id.* at 7 (citing Richard L. Doty, Thomas Wudarski, David A. Marshall and Lloyd Hasting, Marijuana Odor Perception: Studies Modeled From Probable Cause Cases, 28 LAW AND HUMAN BEHAVIOR, NO. 2, 223 (2004)). Gray argues that "'a defendant may contest training or testing standards as flawed or too lax, or raise an issue regarding the particular alert,'" with the court then determining "'whether all the facts surrounding the alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime.'" *Id.* at 6 (quoting *Florida v. Harris*, 568 U.S. 237, 238 (2013)).

In its response brief, the Government proffered argument consistent with Officer Hiser's testimony at the evidentiary hearing. "Officer Hiser immediately smelled raw marijuana" when he turned behind Gray and that "the odor was present" as he followed Gray's car ([Filing No. 76 at 2](#)). When Officer Hiser "changed lanes", however, "the odor disappeared"; yet when he again followed Gray's vehicle, "the odor of raw marijuana returned." *Id.* At the hearing, the Government indicated that this was possible due to the outside-air intake from the front of Officer Hiser's cruiser directing

the odor into the vehicle's passenger compartment through its ventilation system. After Gray turned into a parking lot and Officer Hiser activated his emergency lights, "the odor of raw marijuana became stronger" as Officer Hiser approached Gray's car. *Id.* When Officer Nicholsen arrived, he too "noticed the odor of raw marijuana coming from the" car. *Id.* Accordingly, "Officer Hiser had specific articulable facts—namely, the pervasive odor of marijuana coming from Mr. Gray's car—justifying a brief investigative detention to determine if Mr. Gray was engaged in criminal activity." *Id.* at 3. "Officer Hiser identified the likely source of the marijuana odor as he was following a single vehicle and the odor dissipated when the car was no longer in front of him. When he again traveled behind Mr. Gray's car, the odor returned." *Id.* at 4. Moreover, "[t]he degree of intrusion here was reasonably related to the known facts. Officer Hiser simply activated his lights *after* Mr. Gray had pulled into a parking lot. He then approached the car, finding that the odor became stronger." *Id.* (emphasis in original). Once he reached the car, "Officer Hiser had probable cause to search Gray's vehicle because of the pungent smell of marijuana emanating from it." *Id.* at 4 (citing *United States v. Mazzone*, 782 F.2d 757, 761 (7th Cir. 1966); *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013); *United States v. Page*, 870 F.3d 693, 700 (7th Cir. 2017)). Because of this probable cause to arrest, the Government argues that Officer Hiser could conduct "a search incident to that lawful arrest." *Id.* at 5.

The fact determination at issue in this case is one that necessarily must be determined by the Court based on its real world experience and common sense applied to the evidence. Officer Hiser cannot say whether the windows of his or Gray's vehicles were rolled down and Gray points out persuasively. The Court agrees with Gray that it is incredible that Officer Hiser—who self-admittedly does not have a heightened olfactory system—could smell the scent of two resealable sandwich sized plastic baggies of unburnt marijuana coming from a moving vehicle when

patrolling in his cruiser. This occurrence is not only contrary to any common experiences, but is "implausible" and seemingly "contrary to the laws of nature." *See Contreras*, 820 F.3d at 263. While the Seventh Circuit has held that "the scent of *burning* marijuana alone, if detected," can justify a *Terry* stop, *United States v. Doxy*, 225 F. App'x 400, 402 (7th Cir. 2007) (emphasis added), decades of appellate cases discussing an officer smelling *raw* marijuana entailed physical characteristics—like proximity to, and amount of, marijuana. *See United States v. Cherisme*, No. 19-3402, 2021 WL 1812670, at *1 (3d Cir. May 6, 2021) ("Officers Brea and Brock approached the vehicle. The driver, Cherisme, rolled down the windows, and officers detected a strong odor of raw marijuana emanating from the car."); *United States v. Murray*, 844 F. App'x 39, 40 (10th Cir. 2021) ("When Mr. Murray opened the front passenger door to retrieve the rental agreement from the glovebox, the trooper immediately smelled a strong odor of raw marijuana. At that point Mr. Murray was handcuffed, and the vehicle was searched. That search uncovered three bags containing sixty-four pounds of marijuana."); *United States v. Bettis*, 946 F.3d 1024, 1026 (8th Cir. 2020) ("Minnesota State Trooper Derrick Hagen stopped the Toyota for speeding . . . [and then] smelled a strong odor of raw marijuana coming from the vehicle."); *United States v. Johnson*, 445 F. App'x 311, 312 (11th Cir. 2011) ("Officer McLendon smelled raw marijuana when he removed [a passenger from a car]."); *United States v. West*, 371 F. App'x 625, 627 (6th Cir. 2010) ("Price walked toward the Dodge. The vehicle's driver-side door was open and . . . Price testified that she smelled a strong odor of unburnt marijuana coming from the vehicle."); *United States v. Downs*, 151 F.3d 1301, 1302 (10th Cir. 1998) ("As Sauer approached the Taurus to talk with the driver, . . . [t]he smell of raw marijuana was so strong that it made Sauer's nose run and his eyes water. . . . Inside the trunk, Sauer found approximately 200 pounds of marijuana loosely wrapped in cellophane."); *United States v. Merryman*, 630 F.2d 780, 782–83 (10th Cir. 1980) ("In checking

out the mounds or lumps which were in the back of the truck," the officer "'got a whiff' of what he thought was marijuana . . . [and] took two strong breaths in order to try to identify it and concluded that it was marijuana. It was. There were 242 pounds of it.").

The dearth of appellate caselaw considering—let alone upholding—*Terry* stops solely based on an officer smelling three ounces of *raw* marijuana emanating from two small ziplocked sandwich baggies located under the front seat a *moving* car, while he drives his own vehicle, supports a finding of incredibility of Officer Hiser's testimony as a matter of law. *Cf. People v. Heath*, 214 A.D.2d 519, 520–21, 625 N.Y.S.2d 540, 541 (1995) ("The arresting officer's testimony that he observed defendant exchanging a 2-inch glass vial with a dark top, from a distance of approximately 74 feet, from a moving patrol car, after dark, is, in our view, contrary to common experience and, as such, was incredible as a matter of law and did not support the verdict."). For this reason, the Court **grants** Gray's Motion.

## III.   CONCLUSION

The Government shouldered the burden to show by a preponderance of the evidence that reasonable suspicion supported Gray's traffic stop. *Jackson*, 962 F.3d at 357. For the reasons discussed above, the Court determines that the Government has not met this burden and **GRANTS** Gray's Motion to Suppress (Filing No. 71).

**SO ORDERED.**

Date:  7/9/2021

Distribution:

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

William H. Dazey, Jr.
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.dazey@fd.org

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov